Final case on calendar argument today is Union Gospel Mission of Yakima v. Brown Good morning, your honors. May it please the court. I'm Cynthia Alexander from the Washington Attorney General's office here on behalf of all of the state defendants. The district court's preliminary injunction ruling fundamentally misapplies free exercise law and cannot be squared with Supreme Court precedent. For all practical purposes, it would immunize religious organizations from having to comply with any state or federal law that contains a small business exception or really any categorical exception, including those like the one at issue here that applies identically to religious and secular organizations. Union Gospel Mission is seeking a declaratory judgment that it and similar religious organizations need not comply with the Washington law against discrimination, which I'll refer to as the WALAD in hiring. This is already the law as far as ministerial employees are concerned, but UGM wants something far broader. They want to be able to discriminate in hiring for any position, whether ministerial or non-ministerial. Is that the protection federal law would already give, like under Title VII, that's not a violation? Title VII does offer that protection, yes. In some states too? In some states as well, yes, your honor. So it seems that what they're asking for in the name of constitutional law is to be trued up to that. I think that's right, but that is not the law in Washington. And the Washington law against discrimination, I think this court's ruling last week in Olympus Spa. Yes, thank you. Olympus Spa, I think answers the questions here. So it makes this an easy case. In that case, the court held that the WALAD is neutral and generally applicable, and it's not under-inclusive. It's nothing in it prohibits religious conduct while permitting secular conduct. It's generally applicable. Counsel, if I could push back on that. We looked at that case. Olympus Spa does not mention Tandon. The briefing in that case didn't mention Tandon. And Union Gospel is relying all on Tandon in here. Yes, your governing this case. I think it does govern this case because I think Tandon is not applicable in this case. If we were to say that Tandon applies, then Olympus Spa does not cover this case. It doesn't address the Tandon analysis. That's correct, your honor. What about the church autonomy? Does it speak to that? Olympus Spa did not involve a church, so that issue was not before the court, no. And before I get too far into the merits, I did just want to discuss briefly justiciability. This court found previously that UGM had standing, but things have changed since then. More information has become available, and the state has disclaimed that it will enforce the WALAD against UGM regarding all of the positions that it has described in its complaint. But that's a problem because just limiting it to the positions described in the complaint leaves the state free to enforce it for future vacancies, so that's not sufficient to move the case, is it? Well, it's true that the state has not disavowed enforcement of four positions that aren't before the court, but that's a different issue. That's an issue for another day. Why? They haven't amended their complaint or attempted to amend their complaint to include these other positions. They mentioned 14 other positions that they would like to hire for in a declaration, but they have not tried to amend their complaint to include those positions. I don't know. To me, it has the opposite effect, saying, we're not going to enforce it against these positions. The real implied threat there is that we're going to enforce it against other positions. It almost heightens the need for this pre-enforcement action. Your Honor, this is kind of a unique situation in which UGM was not on the radar at all of the Attorney General's office. The Attorney General did not investigate UGM, still has not investigated UGM, and doesn't know that much about its practices or its employment practices, and then was sued by UGM, sort of, frankly, out of the blue. When the complaint was first filed, we didn't know whether these were ministerial positions or not, or whether there was an enforcement role for the Attorney General there. As the record developed and we got more information, we were comfortable saying that we would not enforce the WALAD for those particular positions. Why not just say the crossword for all the positions? Well, because there aren't facts developed for those positions. I think what UGM is asking for is for us not to enforce the WALAD against non-ministerial employees, and we don't believe that's the law. Counsel, wasn't there an exemption in the law for religious non-profit organizations? In the WALAD previously, you mean? Yes, Your Honor, there was. So, what happened with that? Well, what happened with that is that our state Supreme Court just looked at that in light of our Privilege and Immunities Clause in the Washington Constitution and found that that overall exemption would violate the Privilege and Immunities Clause in a particular situation as applied. As a matter of Washington law? Yes, as a matter of Washington law. And so, the Supreme Court in Woods decided to use the ministerial exception to balance all of those factors, the requirements of the Washington Constitution, the requirements of the First Amendment, and the anti-discrimination laws, and that was the balance that was reached. It's a tough balance because the Free Exercise Clause and the Church Autonomy Clauses are very strong in our jurisprudence, and so it's really difficult to use a state law to negate those rights. That's a difficult challenge. Absolutely, Your Honor. It's true that the First Amendment gives special solicitude to the rights of religious organizations, but here the district court's ruling goes so far beyond free exercise law that it's error, it's abuse of discretion. And I do want to talk about Tandon a bit. Yeah, I'd love to talk about that. In Tandon, as the Court, I'm sure, is aware, there were COVID restrictions that allowed people to gather in restaurants, and movie theaters, and hair salons, and similar places, but not in small gatherings in the home with more than three families. And this was found to be, the Court decided that was a comparable comparison, and that the comparison, that the law treated religious organizations more poorly, treated secular organizations more favorably than the organizations. And the Court, it's really important to remember that the Court in Tandon still uses the word comparable, and I think the district court writes that word out of the opinion, and I think what UGM is asking for writes that word out of the opinion. What the district court held, and I think what UGM is asking for, is that if any secular employer is excluded from a law, then all religious employers should be excluded from the law. And that is an extreme that the Supreme Court hasn't gone to, doesn't it? I mean, what I think that the Supreme Court is saying, if there's an exclusion for some employers, and you have to look at what's the interest behind that exclusion, right? And then in the case of Tandon, the interest behind, why would you favor a tattoo artist versus a home Bible study? It made no sense, that exclusion made no sense. Here, I guess you're suggesting the eight, under eight, what's the interest in having under eight excluded from discrimination? Well, Your Honor, like many other laws, that's an exclusion that protects small businesses from over-regulation. Okay. So a small business protection, hmm. I mean, that in the face, that type of interest doesn't, I think, doesn't square in the face of the First Amendment, though. Well, Your Honor, that exclusion applies equally to religious organizations and non-religious organizations. So it's, I mean, again, Tandon uses the word comparable. So you're saying some groups shouldn't, shouldn't be allowed to discriminate in your view, right? And that includes those that are small businesses. And as I understand from the briefing, isn't there thousands of small businesses in your state? There are, but by far the majority of the employees in the state, almost 90% work for larger businesses. And so it's a small problem. But hundreds of, like hundreds, how many employees are working in small businesses? 87% work in large businesses. 87% of the workers in our state work in large businesses. So, I mean, there are workers, of course, workers in Washington that work in small businesses. And I think, you know, there are... So the interest is in not over-regulating small business. And why couldn't that say, why wouldn't that interest also apply to religious entities? It does. Religious institutions with fewer than eight employees are also excluded. But yeah, but the interest is not over-regulating something, right? And if you're saying that small businesses are entitled to that exemption, why shouldn't religious entities be subject to that exemption? Again, they are if they're small. Yeah, but that's a different interest. Right. And I think we're talking about whether it's a comparable, whether they're comparable. So in a situation like this, where as the court in Olympus Spa recognized, where the exceptions are categorical and mandatory, they don't treat religious organizations worse than secular organizations. And that's what the small business exception is. So, I mean, the only reason we're really talking about Tandon is because the district court ruled on that basis, but it didn't seem that that was even the lead argument below. And some of the amicus briefs we've received here don't talk about Tandon. They talk about church autonomy, which again, seems to have been the lead argument below. Why wouldn't the church autonomy doctrine allow a church to hire people based on their religious views, whether they agree with the church's religious views? Well, Your Honor, the church autonomy doctrine can't swallow the ministerial exception or it would make no sense to have one. So, well, those are different doctrines, right? The ministerial exception gives you, you know, you can be, we don't, you don't have a claim under the ADA or the ADEA. Here we're talking about hiring or firing somebody based on their alliance with the church's religious views. That doesn't say anything about age discrimination or things like that. It's just saying if you want to come work at the church, you need to agree with these specific religious tenets, which we have. Why wouldn't that be covered by the church autonomy doctrine? Well, it may be covered by the church autonomy doctrine, but it's not a doctrine that the Supreme Court has recognized or that this court has recognized it to that extent, to the extent. Right. But I think the reason for that is because statutory law would typically protect this, right? And so the question hasn't been presented because federal law and most state laws would give the church this kind of protection. Washington has gone a different route, which presents the question, but I think that's the reason why it's novel. Well, Your Honor, the church autonomy doctrine, I mean, for one thing, the way that this case has been presented, UGM is arguing that it is arguing that, but it's also arguing in its complaint that these two positions that are discussed in the complaint, but also the 14 positions that they mentioned in declarations, they describe them as having these ministerial functions, you know, with other people and evangelizing and having some functions like that. And so I think if the court believes that there is a cognizable free exercise claim, then the next question is whether these are ministerial employees. I don't know about that, right? I mean, I'm not sure they are ministerial employees, but I think they would say that doesn't matter. We can, if we want to hire a receptionist, we want to hire a janitor who agrees with our religious beliefs. That's our right to do that. Well, church autonomy, it just isn't the law that church autonomy, a doctrine of church autonomy, or like, I guess, in the sense that it's sort of an associational right, it can swallow the ministerial exception and the important government interest in preventing discrimination that underlies the Washington law against discrimination. I mean, that's an important... I mean, what is a church supposed to do, right? If somebody applies and says, I just strongly disagree with the church's religious beliefs, would we say they have nonetheless a state law right to be able to be considered irrespective of that? I mean, that would seem to be a major intrusion on the church. I mean, if the church autonomy doctrine does let them make decisions based on internal church employee, they can make decisions like that. Well, even if it's not a ministerial employee, if a person comes in and talks against the key tenants of the religion and starts to proselytize other people in the workplace against the tenants of that religion, you're saying that the church still has to employ them? Your Honor, I think if the person is proselytizing and that's part of the role, then that is... That's not their role, but they come in as a janitor or as an administrative assistant, whatever position, IT person, but they bring reproach on the views of the church that are deeply held tenants of the church. You're saying that nevertheless, those people have to be hired? Well, I mean, what you're describing is someone who has been hired and who is undermining... Right, but if they don't ascribe to the tenants of the church, that's what you're saying, that even though these people don't agree with the tenants of the church, they still have to be hired. I mean, that is one of the... Managing the church's internal policies and procedures and what it does to further the church's mission is something that the church autonomy doctrine does apply to. So I think it's not the case that there's nothing that UGM or another religious... So they're saying that all these workers do have that function, even though we don't call them ministers, they do pray with the homeless people that use their services and things of that nature. So you would agree that if that's true, then the church autonomy doctrine applies? No, Your Honor, I would agree that if that's true, the ministerial exception would apply. Well, the Supreme Court has called them, I think they're all the same species of the same thing. I mean, I think ministerial exception is a smaller subset of the church autonomy doctrine, but okay, fine, fair enough. So point being though, you agree that if the IT person, the cashier, they all have this doctrinal, religious doctrinal role, then they are protected under either ministerial exception or church autonomy? Under the ministerial exception, yes, and perhaps under church autonomy in specific circumstances. So what are we doing here then? It seems like that's exactly what they allege. Fair, Your Honor, and we have disclaimed intention to enforce the wallet against the positions they've alleged. And I see I'm running out of time. The problem is you haven't disclaimed the intention to enforce the law against future positions that may become open. And that's why they have standing because they want it to be an injunction against the future openings. Understood, Your Honor, but they do have to show a reasonable fear of enforcement. And if the court agrees... I think it's reasonable to fear enforcement if you haven't disclaimed enforcement against those positions. Well, I mean, again, the state just isn't in a position to disclaim or not disclaim positions that it doesn't know about. All right. We understand your positions, though. Okay. Thank you, Your Honor. I'd like to reserve the rest of my time. Good morning. I may please the court. Jeremiah Gallus on behalf of the Union Gospel Mission of Yakima. The district court here got it exactly right. The government does not, the First Amendment does not allow the government to force a religious organization to hire someone who rejects its faith. I'd like to kind of pick up on the questions Your Honors were asking about church autonomy, but I do want to address the tandem general applicability analysis as well. So we heard from my friend on the other side that their view of all the First Amendment protects here is limited to the ministerial exception. And that's the problem. The mission has non-ministerial employees who, as most religious organizations do, have expectations that they share and live out their faith. And we think the church autonomy doctrine, it was our lead claim and there's good reason for this court to reach that. If I could just touch on two reasons. The first is that the courts in this circuit need guidance. There is the Seattle Pacific University case. This case has been up now twice on appeal just two weeks ago. This court heard argument in the World Vision case on a full summary judgment record. In all of those cases, all the religious What case is that one? The one that you argued two weeks ago? I didn't argue, Your Honor, but it was argued before this court two weeks ago as the World Vision case in McMahon. And that was a full summary judgment record where World Vision was pulled through discovery and all the burdens of litigation because they have religious hiring requirements. I wonder if that case might have priority over us on this issue. Does it have the precise issue of church autonomy doctrine? It was raised, Your Honor. It also has the position that was involved. And so that case, there's no decision yet, but it could be resolved on a ministerial exception and not on the broader church autonomy. I was also on a panel, U715, that raised similar issues. Yes, Your Honor. That case is pending as well. That's correct, Your Honor. That was argued in November and that involved the state of Oregon taking hundreds of thousands of dollars in grants away from a religious ministry just because it hires those who share its faith. So the first thing is that I think guidance is needed. The second thing is that church autonomy doctrine would better guard against the type of entanglement and intrusion that would otherwise result in a case like this one. Just by terminology, do you agree that the church autonomy is a broader set and that the ministerial exception is a subset of that? Yes, Your Honor. That's how I've always conceived of it. Correct, Your Honor. The ministerial is just a component of church autonomy and it does provide broader protections for particular positions. What's your response to opposing counsel's observation then that if we go with the doctrine of church autonomy, it swallows the ministerial exception and there's no room for that exception? What's your response to that? So I disagree with that, Your Honor. The ministerial exception is focused on particular roles and if there's a position that's ministerial, it provides broad protection. And the way the protection is broader is it does not matter what the reason was for the employment decision. So the Our Lady of Guadalupe cases are good examples where the religious institutions there let go of some teachers but didn't articulate any religious reason for it. It was just performance and they didn't articulate a religious reason. And because those positions were ministerial, the Supreme Court said hands off. In the position that we're arguing for, for the non-ministerial employees, the religious reason does matter. So if there were a position, for instance, Judge Bress, I think you mentioned age discrimination or disability discrimination. If there was a claim along those lines and a religious justification were not offered for a non-ministerial employee, then those claims could proceed. Whereas with the ministerial exception, they could not. So you concede, I guess, that the employees we're talking about here would qualify as ministers? That's correct, Your Honor. Looking at the case law, we recognize that those positions would not be ministerial. And that's why the protection here is incredibly important in the recognition that church autonomy can still protect a hiring decision that is, again, what pretty much all religious organizations do, which is to ask those who work for them to share and live out their beliefs. So here we're talking about essentially a ministry, but how would this apply to other kinds of religious-type organizations that are not strictly ministries, like a hospital or something else? Yeah, so I think as far as limiting principles, you have to look first, is it a religious institution? And that would be a question. Is it a religious organization, religious institution? Is there a sincere religious belief? So the court can always inquire into sincerity instead of belief. And was the employment decision based on that particular religious belief? And I would think you have to consider whether it's a part of the mission of the organization to live out its tenets and to convert people. Sometimes a hospital may not have that same mission as your organization does. Yes, I would agree with that, Your Honor. Some level of justification for why it is important that they share their faith would be needed. And that's, of course, have that here where the testimony is that the inward fellowship and discipleship of these particular employees affects their ability to outwardly express their religious beliefs and message. So that evidence is in the record. I'm sorry, could you explain again why these employees would not be entitled to ministerial exception? Because as I read the complaint, they do have a religious component to their jobs, right? They do have a religious component. I think, you know, when we look at what the Supreme Court has said and Hosanna Tabor and Our Lady Guadalupe, these are positions that don't have the ministerial type title. They don't have... Teachers don't have that title either. That's true. They don't have religious training, though. There's no religious training. So why wouldn't these be similar to just the teacher in Our Lady Guadalupe? Yeah, I think the key distinction is probably that these positions, their job duties are mostly inward facing. So you don't have the outward facing job duties that a teacher might have. And I would say whether one position might be ministerial or not, not ministerial, I think is somewhat beside the point where you have the state saying that they're not disavowing enforcement. So at least they're arguably non-ministerial and they face a credible threat of enforcement with respect to those positions. And so the question then becomes, does the First Amendment still provide protection? Is the nature of the protection you're asking for the same as what you would already have under federal statutory law? I think so, Your Honor, based on my view of Title VII, my understanding of Title VII, which allows religious organizations to prefer members of their own faith. We're asking for no more than what's allowed there. So sorry to push back on this. So then under your church autonomy doctrine theory, then if these employees had zero religious role, like they have no obligation whatsoever and they don't do anything religious, could the church still fire them as long as it's for a religious purpose? I think so, Your Honor, as far as if the religious institution like the mission here has religious expectations and conduct requirements and the employee were going against those, I think that matters because it's going to affect the ministry internally and their ability. I guess like how would that manifest itself if that person has no religious role in their job and that would never reveal itself, right? So I guess that the way I would approach it is say, has the religious organization presented some sort of religious justification for why it's important for that position to share its faith? And once it's done that, then I don't see how the government could come in and second-guess it. That's fair. You know, because you get into the church autonomy issues if the government can come in and says, I know you said it's important that the janitor or the secretary share the faith, but we actually don't think it is. And that's the precise type of second-guessing and entanglement intrusion that church autonomy is intended for. Counsel, are you arguing that Title VII preempts the Washington law? No, that's not our argument, Your Honor. Yeah. I take it from the materials that your clients essentially believe that all employees, regardless of what they do, that it's your client's religious judgment that they need to share their religious beliefs, whether they're working in a cubicle by themselves and never talking to anybody else or whether they're out there on the front lines talking to clients or visitors. Yes, Your Honor, that's exactly right. And I think that's why one of the reasons church autonomy is implicated is because the government would be second-guessing what ultimately is a religious determination that should be the religious institutions to make. The other reason, and I think this is the more obvious one, is to require a religious organization to hire those who reject its faith would fundamentally alter the character and composition of the ministry. And we would say that that goes to the concerns of interfering with internal governance of a religious institution. So what does this mean in practice? You could have future employees, prospective employees, sign statements, or you could conduct interviews of job applicants and ask them about these things. Like, what would it actually mean on the ground? Yeah, on the ground, it means that the mission could continue with its co-religious hiring practices, its application process without the fear and threat of government punishment that currently exists. So it would be allowed to ask and inquire of potential applicants and current employees as far as their alignment with the core convictions of the ministry. So that's how things worked before the exemption was removed. Exactly right. And the WLAD had an exemption, a complete and total exemption for 70 plus years. And what we're seeking here really is a partial exemption where they're just asking to be allowed to hire those who share and live out its faith, willing to comply with other aspects of the WLAD. Can I ask, you know, one of the, you know, I was on the Huntsman case a while ago, and one of the questions we always had, how far does a church autonomy doctrine go? Like, so for example, like all evidence points that you are firing a janitor for non-religious reasons and, you know, the church says church autonomy, there's religious reason for it. Are we, are courts completely precluded under peaking beyond that reasoning? But, you know, how far does it go? No one seems to have that answer. Yeah, so it's a good question. I think, I think really the way I would look at that is you have some limiting principles. Is it a religious organization? Yeah. Is it a sincere religious belief? And courts conduct sincerity requirements. And as long as the religious belief is sincere and it's sincere that they base their decision on that belief, then I don't think the courts can go any further. And I don't think the government can go any further. So the person would be able to bring an action against the organization and all of that would be sorted out in terms of whether or not the church autonomy doctrine bars any further delving into that hiring or firing decision. Yes, that's correct, Your Honor. So if I may, I just want to address the Tandon general applicability question. We think the district court did faithfully apply the Supreme Court's precedents. And if you look at Tandon and Fulton in particular, the Supreme Court has said that a law is not generally applicable and triggers strict scrutiny if it does one of two things. The first is if it treats comparable secular activity more favorably than religious exercise or if it includes a mechanism for individualized exemptions. We think the WLAD does both of those things here. The lower court focused on the small employer exemption and just one exemption is enough to trigger strict scrutiny, but we actually have five here. And I'd like to just briefly touch on those five. Well, the only one the district court really did was the small business exception. And the other ones are really hardly mentioned in the briefs. They come up in a limited way. So it seems if this is going to be affirmed on that ground, it would really have to be under the small business exception. That's the only one. You're correct. That's the only one that the district court addressed. I will say that this court can affirm on any grounds and I do think it's supported by the record. And of course, this type of analysis is you're looking at the text of the law and in doing the comparability analysis, you're looking at the asserted government interest. And so here the government's asserted interest is in the elimination and prevention of discrimination. And if you go through these exemptions, that interest is being undermined. The small employers, there's hundreds of thousands of small employers that employ hundreds of employees. You also have an example, and just candidly, Your Honors, this is not in our briefing, but it's something I came across in oral argument. The WLAD allows state tribal schools to implement a policy of Indian preference or Native American preference in employment. That's a revised code of Washington section 49.60.400 subsection seven. We also have the BFOQ process that's system of individualized exemptions. That would be a more Fulton type argument. It would, Your Honor, yes. Then you have the WLAD allowing educational institutions, public and private, regardless of size, discriminating and making distinctions based on sex and marital status in their housing and dormitory policies. And then you also have the distinctly private businesses and organizations that are allowed under the WLAD to discriminate on any grounds in the provision of their goods and services. We would submit that all of these exemptions undermine the government's asserted interest here in eliminating and preventing. Yeah, I mean, some of the other ones you mentioned, I think, raise some other questions that aren't really fleshed out that much in the brief, aren't talked about in the district court decision at all. But the under eight employee one, that seems like a harder argument for your clients to make, given that the religious institutions get the benefit of that. I mean, really what you're trying to do is say anytime anybody gets an exception, any religious organization, therefore, is immune from the law. That's that seems quite broader than Tandon. Well, I wouldn't say they're immune from the law because it's not a categorical immunity like the small employers are getting. It's just carving out the particular religious practice. We do think the district court faithfully applied Tandon. If you look at how Tandon did that analysis to have small businesses versus larger businesses and said, really, what we need to look at is what is the government's asserted interest. And here they're asserting an interest in eliminating and preventing discrimination. And that undermines to allow hundreds of thousands. Well, here they're suggesting that the the the interest in the carve out was to to not overburden small businesses. Yeah. So how would that apply for you all? Your Honor, I think that's that's worse for them if it's if that's their asserted interest is to not burden small employers. That's not the type of interest that would generally allow them to infringe on constitutional rights. And so if if they are burdening, not wanting to burden small employers, they shouldn't then turn around and burden a religious employer like the mission. But the issue is whether or not secular institutions are being treated more favorably. And it's hard for me to make that leap analytically to the small business exemption. So how is that showing that secular entities are being treated more favorably? Yeah, I think, again, Your Honor, it's going to the government's interest. So you say, well, what is the government asserting as its interest? And here, if they're asserting an interest in eliminating discrimination or not burdening small employers, then that interest is is being undermined by the exemption. In similar or worse ways than the what the mission is requested, but we have cases that say that the government can take an incremental approach in terms of achieving its objectives, and so a government can say, here's the line we're going to draw in terms of how we start to reach our goals. So why wouldn't that theory permit the government to exempt the small businesses? Yeah, Your Honor, that's again, I just keep going back to Tandon, what the Supreme Court said in Tandon, as far as focusing on interest. I will acknowledge that the the argument that the other my friend on the other side is making with respect to the employers. That's why I think it's significant that it's not just one exemption within the WLAD. You have multiple ones. But that's the only one that the court relied on. Sure. And Your Honor, we would be perfectly happy for this court to go to the church autonomy argument, which is our first and lead claim. And we think really fundamentally, that's what this case is about. Can the government force a religious institution to hire those who don't share? I think the church autonomy doctrine is a threshold question that, of course, must address up front. So I don't I don't have a position on that particular question, but I clearly I do. I think there's I think there's good reason to. So I think there's very good reason to in this case. And the court should. Sorry. So just to the Tandon question, why couldn't the argument be? Well, if the state has an interest in unburdening small businesses, like then then you're disfavoring religion versus small business. You're favoring small business over religion. And that doesn't fly under the First Amendment. I agree, Your Honor, that goes to, you know, Tandon and some of the other general applicable the general applicable cases that the Supreme Court has addressed. Talk about government giving secular reasons for an exemption. So basically saying here's a secular justification for why we exempt this category of employers. And if they're going to say there's a secular reason that's good enough for an exemption, it can't then turn around and say a religious. Right. But I mean, it's it's this is why I think it's I understand why you led with the church autonomy doctrine and not this particular argument, because this argument it's hard to describe this as secular when it includes religious institutions. They get the benefit of the exemption as well. The implication of the argument would be whatever exception it is, no matter how neutral it is, no matter how well it applies to entities like it's still it still creates a tandem problem that would basically turn every federal discrimination law into a tandem problem. I don't think the Supreme Court has said that. So I understand that. I think in Tandon, the houses of worship were exempted in the same way that large businesses were. So you did have religious exercise that was getting a benefit exemption. So I do think Tandon speaks to it. But again, we're perfectly happy if this court were to address the church autonomy argument, because we think that's at the heart of the case. And unless your honors have any further questions, we'd ask you to affirm. Thank you. Thank you. I just have a few points that I want to make with regard to the church autonomy doctrine. That's not an issue that the district court reached either. And this court does not need to reach it either, because this case can be resolved with regard to the ministerial exception. As your honor noted, all of these positions have been described as having a sort of ministerial role to evangelize and to pray. And that those kinds of roles fall within the ministerial exception and that this case can be resolved on that basis. Do you think that's narrower if we just do that narrow ruling versus broader church autonomy? I think that that is, I think that that's what the, yes, your honor. Sorry. I mean, that's a somewhat, you know, clients in your position would come in and try to narrow the ministerial exception. So here you would be essentially broadening it, even in the face of your opposing counsel's concession that it doesn't apply to these employees. Well, I don't think we're broadening it. I think what we're saying is, you know, we're aware of the requirements that the Supreme Court mentioned in Our Lady of Guadalupe that tend to show ministerial exceptions. And some of them are involving teachers. I mean, that seems a little different than an IP technician. That's initially what we thought as well, you know, but as the record developed and there, I feel like they're trying to have it both ways. You know, they want to say that they would like all non-ministerial positions to be safe from having to comply with the WALAD. And at the same time, they're saying, you know, these are ministerial positions. So it's kind of a, it's this particular case with these particular positions that have been alleged in the complaint can be resolved based on the ministerial exception and the Washington Attorney General's decision not to enforce the WALAD with regard to the positions raised in the complaint. Is that why the Washington Attorney General did the non-enforcement, that there was an independent analysis of that, that these are entitled to ministerial exception, or was it just a litigation tactic? No, no, it's not a litigation tactic, Your Honor. What happened, as I understand it, is that as the record, again, we did not know anything about this organization when they filed the lawsuit. And so as the record developed and as some of the allegations in the complaint were confirmed with declarations under oath that described the positions, we became more comfortable that these are not the kind of that we would enforce the WALAD against. And it's not a, it wasn't a litigation tactic. It had to do with the status of the case and how the record has developed. And Your Honors, I just want to say again, I think I might have said this already, but Olympus Spa did discuss a carve-out for private clubs and found that that carve-out is not a mechanism for individualized exemption. So Olympus Spa addressed the issue that we've been talking about. It just addressed it last week. So I just wanted to draw that to the Court's attention. And then I just did want to mention that the kind of rule that UGM is seeking and the implication of the District Court's ruling would have unanticipated consequences in terms of things like small business exceptions not being, you know, not being considered by the legislature when it makes policy decisions. So there are, this is a broader issue than just, you know, is church autonomy applicable in this case? That's a different issue than church autonomy, though, the small business exception. I think that's a little more difficult in my view for them to make, but that's a different argument. You've exceeded your time. Would you like to wrap up? Yes, Your Honor. Thank you. We ask the Court to vacate the preliminary injunction and to remand to the trial court with instructions to either dismiss the case for lack of judiciability or for further proceedings. All right. Thank you, Counsel. Thank you to both Counsel for your helpful arguments. The case just argued is submitted for decision by the Court. We are adjourned. All rise.
judges: RAWLINSON, BRESS, BUMATAY